BARRY & FINAN LUMBER CO. *v.* CITIZENS' INSURANCE CO.

1. FIRE INSURANCE—LIMITATION OF ACTIONS—STANDARD POLICY.
   Under the Michigan standard fire-insurance policy, a plaintiff cannot recover unless his action is commenced within 12 months from the date of the fire.

2. SAME—LOCAL AGENTS — AUTHORITY TO ADJUST LOSSES — WAIVER OF TERMS OF POLICY.
   The statements and acts of a local agent of a fire-insurance company, authorized to receive proposals for insurance and countersign and deliver policies, cannot be received to show that he was authorized to adjust losses for the company, or had power to waive a provision of the policy requiring action to be commenced within 12 months from the time of the loss.

3. SAME—FOREIGN COMPANIES—STATUTES.
   The provision of 2 Comp. Laws, § 7246, defining who shall be deemed to be agents of foreign insurance companies, does not operate to increase an agent's authority, or make the company liable for his representations with reference thereto.

Error to Cheboygan; Shepherd, J. Submitted February 5, 1904. (Docket No. 89.) Decided March 8, 1904.

*Assumpsit* by the Barry & Finan Lumber Company against the Citizens' Insurance Company of Missouri on a fire policy. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*Frank L. Fowler*, for appellant.

*George E. & M. A. Nichols*, for appellee.

HOOKER, J. The plaintiff suffered the loss, by fire, of certain property covered by insurance in the defendant company. The court directed a verdict for the defendant, upon the ground that the action was not brought within one year from the time the loss occurred. Plaintiff appealed.

The plaintiff owned property in Chebòygan county, which was insured by the defendant, through its agents at Frankfort, Chandler & Norris. There were also policies upon the same property issued by other companies through Chandler & Norris. The property being destroyed by fire, plaintiff's president, Mr. Barry, notified the Chandler & Norris agency, and, Chandler having moved to Detroit (though still holding his interest in the business at Frankfort), Norris received this communication, and notified the company, and afterwards asked Mr. Barry to come to Frankfort, which he did. At this time Norris told him that he would have an adjuster on the ground within 60 days, that Chandler was adjuster for one of the companies, and that he thought he would adjust for all of them. It does not appear that Barry made proofs of loss on the occasion referred to. The fire was in July, and the matter was the subject of some correspondence until October 3d, when Mr. Barry wrote the Chandler agency that he "had not seen or heard of any one to adjust the loss," and asked to hear from them. Chandler had severed his relations with Norris in September, and Norris replied as follows:

"FRANKFORT, MICH., Oct. 6, 1900.
"T. W. BARRY,
      "Tower, Mich.
  "*Dear Sir:* Replying to your favor of the 3d inst., I will send you policy on dwelling at Crystal City, Monday.
  "With regard to the adjustment of insurance, I have written the companies about it twice, but received no answer. For your own protection, I inclose forms of the policies, and would suggest that you go immediately to some good lawyer, and have him draw up the necessary proofs and serve them on the companies by registering them immediately. The 60 days have expired, and this should be done to protect your interests. I do not know what the matter is, but they should have been around before this, and the filing of proofs will probably bring them to account. I send you the forms for proofs; also forms of the policies, with the expiration noted on same at the bottom. I also send you addressed envelopes of the different companies.

"Whatever suggestions I have advanced in this letter must not be construed as coming from me in my capacity as agent of any of these companies, but merely in an individual capacity, and I trust you will observe same in a confidential manner.

"Yours very truly,
"J. T. NORRIS."

On or about November 12th, Barry went to Frankfort to make proofs of loss in response to a letter from Norris, and there met Chandler, who said that he had adjusted the loss for one company, and would act for all the other companies. He wrote up the proofs. Norris stated on this occasion that Chandler would adjust for all the companies, and plaintiff testified that Chandler stated that "there was no question about the amount, that that was settled upon, and we would receive our checks in a short time. He said that he was the adjuster for these companies, though he was not asked anything in relation to his authority." The proofs were duly mailed in a return envelope, and that day the plaintiff's claim was put into the hands of Mr. Warner, a lawyer.

The matter ran along until about July 2, 1901, when Mr. Barry told Mr. Norris that "the year would be up in a short time," and they were "bound to begin suit before the year was up;" and Mr. Norris said: "What are you talking about? You have six years to begin your suit in." They went into Warner's office, and the same thing was stated to him, and he looked up the law on it, and he said:

"While it was stated in the contract or in the policy that it was not absolutely necessary to begin suit within the year, that, if the checks would not come within a few days, Mr. Warner said they would begin the suit. * * * Mr. Norris also stated at that time that, if we began suit against the companies, they would take all the time they were entitled to, and delay the matter along, and, if we would just be patient about it, we would get our money a good deal quicker than we could to plunge into court."

Warner testified:

"The honest fact is, I was not acquainted with the pro-

vision in regard to the commencement of suit contained in the Michigan standard form insurance policy. I should have undoubtedly commenced suit against the Citizens' Insurance Company but for the representations or statements made by Mr. Chandler. That was the principal reason for the delay in commencing suit."

We have made a fruitless search in the record for any testimony tending to show any authority in either Norris or Chandler to adjust this loss, or in any way compromise the company in relation to it. It is settled that, under a provision like the one in this policy, a plaintiff cannot ordinarily recover, unless his action is begun within 12 months. *McIntyre* v. *Insurance Co.*, 52 Mich. 189 (17 N. W. 781); *Voorheis* v. *Benefit Society*, 91 Mich. 469 (51 N. W. 1109); *Gould* v. *Insurance Co.*, 90 Mich. 302 (51 N. W. 455); *Steele* v. *Insurance Co.*, 93 Mich. 81 (53 N. W. 514, 18 L. R. A. 85); *Law* v. *Accident Ass'n*, 94 Mich. 266 (53 N. W. 1104); *Lentz* v. *Insurance Co.*, 96 Mich. 445 (55 N. W. 993); *Peck* v. *Insurance Co.*, 102 Mich. 52 (60 N. W. 453); *Allen* v. *Insurance Co.*, 106 Mich. 204 (64 N. W. 15); *Shackett* v. *Benefit Society*, 107 Mich. 65 (64 N. W. 875). It is equally well settled that the company may waive the benefit of this provision; but in this case the company has not waived it, unless it was bound by what was said by Chandler and Norris. There is no evidence, except the statements and acts of Chandler and Norris, which tends to show that either was more than a local agent for taking policies. Both said that Chandler was adjuster and that the claim would be paid, and Chandler made out proofs of loss and professed to adjust the claim; but none of this is brought home to the defendant. There is nothing that can be said to be a holding out that these men had authority to speak for the company in this settlement, as it has been repeatedly held that an agent's declarations are not proof of his authority, and that his acts have no significance, unless recognized by the alleged principal in a way to be equivalent to a holding out that the relation of principal and

agent exists, and a holding out of the requisite authority. Norris expressly disavowed it in his letter, and there is no evidence justifying an inference of authority on the part of either. See Ostrander, Fire Ins. § 57. The author says:

"Power to waive implies authority to act. One without the other is impossible. 'Waiver' has generally been defined by the courts as the 'voluntary relinquishment of a known right.' Without the existence of a right, there can be no abandonment, for there would be nothing to abandon. The question, then, as to the power of an agent to waive notice and proofs of loss, must be considered in reference to his authority in respect to the settlement of claims. If the insurance company has carefully defined the duties of its local agent to be entirely separate and distinct from that of its adjuster, and has not been accustomed to appoint him to the performance of any important duties in respect to the care of damaged property or the computation of losses, nor in any manner held him out to the public as having authority in such matters, the agent, it is needless to say, will be wholly without authority, either real or apparent. If it were customary for local agents to adjust losses, then adjustment would be within the scope of every agent's apparent authority; but the fact being that adjustments, except in very rare instances, are directed in every detail by persons specially designated because of their exceptional skill and experience, there can be no reasonable inference that the local agent has any authority in respect to notice and proofs of loss."

In *Knudson* v. *Insurance Co.*, 75 Wis. 198 (43 N. W. 954), one Gilbert was the local agent of the company, and the plaintiff claimed that the proofs of loss required by the terms of the policy had been waived by him. Lyon, J., said:

"There is no proof that Gilbert had any authority in the premises beyond that of an ordinary local agent. Whatever power he may have had, when he made the contract of insurance, to waive conditions in the policy, he had no power, by its terms, as a mere local agent, to waive such conditions afterwards. It was so held in *Hawkins* v. *Insurance Co.*, 70 Wis. 1 (35 N. W. 34)."

In *Barre* v. *Insurance Co.*, 76 Iowa, 609 (41 N. W. 373), the court said:

"The acts claimed to be a waiver were done either by the agent who took the application for the insurance, and made the contract sued on, or by an adjuster.   But it is not shown, nor attempted to be, that either of these persons was authorized to make the waiver.   The duties with which it is shown, or will be inferred, they were clothed, do not pertain to waivers of this character."

Therefore, that their statements were rightfully excluded.

The rule is tersely stated in *Weidert* v. *Insurance Co.*, 19 Or. 261 (24 Pac. 242, 20 Am. St. Rep. 809):

" 'But in all cases the distinction between the powers of general and special agents should be kept in view, and, in the case of a special agent, the assured must at his peril know whether the act relied on is within the scope of his real or of his apparent authority.   He is bound to know when he has passed the precise limits of his power, and cannot rely upon the assumption of authority by the agent to do an act beyond the scope of his actual authority, real or apparent.   The declarations of an agent are not evidence of his authority, but the scope and extent of his powers must be determined by his actual authority, or by his acts, and the recognition thereof by his principal.'   2 Wood, Fire Ins. § 421."

And it was held that the statements of the special or local agent could not be received to bind the company.

In *Bush* v. *Insurance Co.*, 63 N. Y. 531, Rapallo, J., said:

"It cannot be held that the authority of an agent to receive proposals for insurance, and countersign and deliver policies, extends to adjusting losses, or waiving the stipulated proofs of loss, and binding the company to pay without them."

The point is within our own cases.   See *Cleaver* v. *Insurance Co.*, 65 Mich. 532 (32 N. W. 660, 8 Am. St. Rep. 908); *Gould* v. *Insurance Co.*, 90 Mich. 306 (51 N. W. 455); *Steele* v. *Insurance Co.*, 93 Mich. 81 (53 N. W. 514, 18 L. R. A. 85); *Wadhams, Ryan & Reule* v. *Assurance Co.*, 117 Mich. 514 (76 N. W. 6).

Other cases cited by defendant's counsel are the following: *Kyte* v. *Assurance Co.*, 144 Mass. 43 (10 N. E. 518); *Smith* v. *Insurance Co.*, 60 Vt. 682 (15 Atl. 353, 1 L. R. A. 216, 6 Am. St. Rep. 144); *Kirkman* v. *Insurance Co.*, 90 Iowa, 457 (57 N. W. 952, 48 Am. St. Rep. 454); *Harrison* v. *Insurance Co.*, 67 Fed. 577.

These cases are not at variance with cases where a waiver has been held to arise from knowledge by the agent issuing the policy of existing conditions when the policy was taken, nor from acts within the scope of the local agent's or adjuster's authority, many of which are cited by plaintiff's counsel; nor does the statute (2 Comp. Laws, § 7246) operate to increase an agent's authority, and make the principal liable for his representations as to authority.

Upon the face of this record, this is a defense which is technical, and does not appeal strongly to our sense of justice; but it is not necessarily true that defendant has no meritorious defense. It has relied on its legal defense, which it had a right to do.

The judgment is affirmed.

MOORE, C. J., CARPENTER and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.